UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

SCOTTSDALE INSURANCE COMPANY, )
INC., )
 )
        Plaintiffs, )
 )
v. ) Case No. 06-CV-0359-CVE-SAJ
 )
OKLAHOMA TRANSIT AUTHORITY, INC., )
GARY CUPPS and KAREN CUPPS, )
 )
        Defendants and )
        Third-Party Plaintiffs, )
 )
v. )
 )
BOB TURNER and JOE WEST COMPANY, )
 )
        Third-Party Defendants. )

**OPINION AND ORDER**

Now before the Court is defendants' Opposed Motion to Amend Answer and File Counterclaims (Dkt. # 53). Defendants request leave of court to amend their answer to include two additional defenses and counterclaims for breach of contract and bad faith against plaintiff Scottsdale Insurance Company ("Scottsdale").

**I.**

On April 19, 2004, Oklahoma Transit Authority, Inc. ("OTA") was transporting Ruth Mae Jones ("Jones"). Jones was in a wheelchair, but Michael Whitecotton ("Whitecotton"), the OTA employee transporting Jones, failed to ensure that Jones was wearing a seatbelt. Whitecotton missed a turn and made a sudden stop when attempting to turn the vehicle around. Jones fell out of her wheelchair and suffered injuries that allegedly led to her death 21 days after the incident. Scottsdale

had previously issued a business automobile liability policy to OTA, but the vehicle involved in the April 19, 2004 accident was not listed as a covered automobile in the policy. Scottsdale asserts that the insurance policy included a "Form F endorsement" that required it to pay any judgment or loss to the public caused by an OTA vehicle, even if the vehicle was not expressly covered by the policy. Scottsdale settled the claim of Jones' estate against OTA for $250,000 in exchange for a release of all claims by Jones' estate.[1]

Scottsdale filed this lawsuit on July 12, 2006 claiming that it has a right to reimbursement from OTA, Gary Cupps, and Karen Cupps for any amounts it was required to pay based on the Form F endorsement. Defendants filed an answer on August 4, 2006, and attorney Michael Shiflet ("Shiflet") entered an appearance on behalf of defendants. Defendants also filed a third-party complaint against Joe West Company and Bob Turner asserting that these third-party defendants had a duty to reimburse defendants for any amounts they might owe to Scottsdale.[2] The Court entered a scheduling order on September 22, 2006 setting a discovery cutoff of March 30, 2007 and a deadline to amend pleadings of November 6, 2006. By agreement, the scheduling order was amended, and the discovery cutoff was extended to June 14, 2007 and the deadline to amend pleadings was extended to February 10, 2007.

On February 14, 2007, Shiflet filed a motion to withdraw as defense counsel because he was no longer employed by the law firm of Frasier, Frasier, & Hickman, LLP. Another attorney from

---

[1] The complaint (Dkt. # 2) is not clear whether Jones' estate filed a lawsuit against OTA and its employees or whether Jones' estate simply filed an insurance claim against Scottsdale as OTA's insurer. For purposes of ruling on defendants' motion to amend, the difference is not material.

[2] Defendants filed a stipulation of dismissal with prejudice of Bob Turner and Joe West Company on September 18, 2007.

Frasier, Frasier, & Hickman, LLP., Frank W. Frasier, III ("Frasier"), entered an appearance on behalf of defendants. The Court granted Shiflet's motion to withdraw on February 15, 2007. On April 20, 2007, Frasier filed a motion to withdraw. Plaintiff and the third-party defendants did not object to the motion to withdraw on the condition that defendants obtain new counsel within 30 days. On April 23, 2007, the Court granted Frasier's motion subject to the condition that the individual defendants obtain new counsel or file a notice stating their intention to proceed in propria persona within 20 days of the Court's order. Dkt # 37. The corporate defendant, OTA, could not appear without counsel and was ordered to obtain new counsel within 20 days of the Court's order.

By May 18, 2007, none of the defendants had located a new attorney nor had the individual defendants notified the Court that they would proceed in propria persona, and Frasier renewed his request to withdraw. On May 21, 2007, the third-party defendants moved to dismiss defendants' third-party complaint as a sanction for failure to comply with the Court's order. The Court ordered defendants to show cause why their third-party complaint should not be dismissed. In response to the Court's order to show cause, defendants stated that they were experiencing difficulty finding a new attorney, and they requested a 30 day extension of the deadline to obtain new counsel. The Court granted defendants' request for an extension of time, but the Court was explicit that no further extensions of time would be granted. Dkt. # 44.

Jeffrey Martin ("Martin") entered an appearance on behalf of defendants on July 5, 2007. The Court denied the third-party defendants' motion to dismiss because, although defendants delayed this litigation, there was no evidence that defendants intentionally caused any delay. Dkt. # 50. The Court also noted that neither plaintiff nor the third-party defendants had attempted to

expedite the litigation or continue with discovery while the motion to dismiss was pending. Id. at 4. The Court entered a second amended scheduling order on July 18, 2007 resetting the discovery cutoff for September 14, 2007, but the Court did not extend the deadline to amend pleadings. Dkt. # 52. On July 30, 2007, defendants filed this motion to amend their answer and file counterclaims for breach of contract and bad faith against Scottsdale. Scottsdale and the third-party defendants object to defendants' motion to amend and argue that defendants' motion should be denied on the grounds of undue delay and futility.[3]

**II.**

Defendants request leave of court to amend their answer and file counterclaims for breach of contract and bad faith against Scottsdale. Scottsdale responds that defendants have not shown good cause for amending its answer out of time and that defendants have not diligently participated in this lawsuit. Scottsdale also argues that defendants' proposed counterclaims are meritless and should be denied on the basis of futility. Defendants reply that Scottsdale has not completed its discovery in this case and it will not suffer any prejudice if defendants are permitted to amend their answer and add counterclaims.

A defendant is required to affirmatively plead "any . . . matter constituting an avoidance or affirmative defense." Fed. R. Civ. P. 8(c). When a party omits an affirmative defense or discovers new evidence giving rise to a defense as discovery proceeds, the party must move to amend his pleadings under Fed. R. Civ. P. 15(a) to rely on that defense in a dispositive motion or at trial. Ahmad v. Furlong, 435 F.3d 1196, 1202 (10th Cir. 2006); Harris v. United States Dep't of Veterans

---

[3]   The third-party defendants, Bob Turner and Joe West Company, are no longer parties to this lawsuit, and the Court will not consider their objection to defendants' motion to amend.

Affairs, 126 F.3d 339, 345 (10th Cir. 1997). Rule 15(a) provides that "leave shall be freely given when justice so requires." Minter v. Prime Equipment Co., 451 F.3d 1196, 1204 (10th Cir. 2006); Bradley v. Val-Mejias, 379 F.3d 892, 900 (10th Cir. 2004). "In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance . . . the leave sought should, as the rules require, be 'freely given'" Foman v. Davis, 371 U.S. 178, 182 (1962). An amendment is futile if it would be subject to dismissal pursuant to Fed. R. Civ. P. 12. Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Services, Inc., 175 F.3d 848, 859 (10th Cir. 1999).

A court may deny leave to amend "when the party filing the motion has no adequate explanation for the delay." Minter, 451 F.3d at 1206 (quoting Frank v. U.S. West, 3 F.3d 1357, 1365-66 (10th Cir. 1993)). When considering delay as the basis to deny a motion to amend, a court must consider the length of the delay and the reason for the delay to determine if the moving party's actions constitute "undue" delay. Smith v. Aztec Well Servicing Co., 462 F.3d 1274, 1285 (10th Cir. 2006). "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." Fed. R. Civ. P. 13(f).[4] However, when a party seeks to add counterclaims after the deadline in the scheduling order for amending pleadings has expired, the

---

[4] As a practical matter, courts have generally construed Rule 13(f) and Rule 15(a) together and treat a motion to add omitted counterclaims under the same standard that governs other types of motions to amend pleadings. Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 940 (4th Cir. 1995); Triad Elec. & Controls, Inc. v. Power Systems, 117 F.3d 180, 192 (5th Cir. 1997); Aerotech Resources, Inc. v. Dodson Aviation, Inc., 2001 WL 474302, *3 (D. Kan. Apr. 23, 2001).

5

moving party must show good cause for his failure to amend his pleadings within the deadline established by the court. SIL-FLO, Inc. v. SFHC, Inc., 917 F.2d 1507, 1518 (10th Cir. 1990).

In this case, the deadline to amend pleadings expired on February 10, 2007 and defendants' motion to amend would require the Court to amend the scheduling order. Therefore, defendants bear the burden to show good cause for their failure to amend their pleadings within the deadline established by the Court. Defendants provide the following explanation for their delay in seeking to amend their answer and file counterclaims:

> Defendants claim their previous lawyers inadvertently through oversight and inattentiveness failed to plead at least two defenses specifically and also some counterclaims for them. Defendants had two previous lawyers. The first withdrew on February 14, 2007. The second one filed a motion to withdraw on 04/20/07 and was allowed to withdraw on July 16, 2007 after Defendants obtained new counsel on or about 07/05/07. During their representation of Defendants, at no fault of Defendants, neither of the previous lawyers engaged in any discovery activities. Furthermore, surprisingly, they somehow totally missed the significance of express language in the subject insurance policy and a letter written by Plaintiff to the injured party's attorney.

Dkt. # 60, at 2. In essence, defendants argue that they should be permitted to add new defenses and file counterclaims due to attorney oversight or neglect.

As required by Tenth Circuit precedent, the Court will consider the length of the delay and the reason for defendants' delay in seeking to amend their answer and file counterclaims. Smith, 462 F.3d at 1285; Minter, 451 F.3d at 1205. Defendants filed their answer on August 4, 2006 and sought leave to amend on July 30, 2007. Defendants waited almost a full year before requesting permission to add counterclaims that would drastically change the character of this lawsuit. Defendants are relying on the insurance policy and a letter from Scottsdale to defendants as the basis for their counterclaims, but this is not newly discovered evidence. Defendants were in possession of the insurance policy from the inception of this lawsuit, and the letter, referenced in defendant's

6

reply, was sent to defendants' attorney on December 13, 2005. Dkt. # 60, Ex. A. This does not provide good cause for delaying almost a year before seeking to inject substantial counterclaims into this lawsuit. See Federal Ins. Co. v. Gates Learjet Corp., 823 F.2d 383 (10th Cir. 1987) (district court properly denied motion to add counterclaims when period of delay was unreasonable and the defendant possessed the evidence supporting the proposed counterclaims at the time the answer was filed").

Defendants argue that plaintiff's concerns about delaying this lawsuit are overstated and, if necessary, defendants state that they would be willing to proceed with its counterclaims under the existing scheduling order to avoid any additional delay. The Court finds that Scottsdale would be prejudiced if the Court allowed defendants to amend their answer or add counterclaims at this late stage of the lawsuit. Scottsdale is correct that the counterclaims would change the character of the entire lawsuit, and would require it to conduct significant discovery to defend against breach of contract and bad faith counterclaims. Attorney oversight is not a sufficient basis to excuse defendants' lengthy delay to amend their answer or add counterclaims, especially when the counterclaims are based on evidence that has been in defendants' possession throughout the lawsuit. The Court has already entered three scheduling orders and it would be necessary to prepare a new scheduling order, out of fairness to Scottsdale, if the Court were to grant defendants' motion to amend. Even if defendants are willing to proceed without a new scheduling order, Scottsdale would be prejudiced when preparing a defense against defendants' counterclaims without additional time to conduct discovery on those counterclaims. Defendants' failure to obtain new counsel has substantially delayed this lawsuit, and the Court will not permit defendants to further delay this case by adding new defenses and counterclaims without good cause for the delay.

**IT IS THEREFORE ORDERED** that defendants' Opposed Motion to Amend Answer and File Counterclaims (Dkt. # 53) is **denied**.

**DATED** this 20th day of September, 2007.

*[Signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT